[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal brought pursuant to Conn. Gen. Stat. 16-307 and 4-183. On January 31, 1986, respondent John Balkun III d/b/a Jack's Rigging Machinery Sales (hereinafter "Balkun") filed an application with the Department of Public Utility Control (hereinafter "DPUC") seeking motor common carrier authorization to transport small machinery and accessories, new or used, over irregular routes between all CT Page 1643 points in Connecticut. (Return of Record, Item 1). On August 21, 1986 the petitioners in this appeal petitioned for party status in the DPUC proceedings to protest Balkun's application. Such status was granted August 22, 1986. (Return of Record, Item 12). The petitioners, Paul J. Bucchen Co., J. R. Christoni, Inc., Light Rigging Co., Northeast Riggers, Inc., and Walker Crane and Rigging Corp., are motor common carriers who hold Connecticut intrastate operating authority. (Return of Record, Item 12).
Pursuant to Conn. Gen. Stat. 16-284, the DPUC held two days of hearings on Balkun's application (Return of Record, Items 40 41). Both the applicant and his opponent presented and cross-examined witnesses; Hearing Officer Shea also questioned the applicant. (Return of Record, Items 40 41). The proposed decision was mailed to the applicant and the petitioners on December 10, 1986, (Return of Record, Item 36), and written exceptions were filed by the petitioners with the agency on December 22, 1986. (Return of Record, Item 37). In his letter accompanying the petitioners' written exceptions to the proposed decision, petitioner's attorney stated "The Protestants await further communication from the Department regarding oral argument and written brief's pursuant [sic] to [Conn. Gen. Stat.4-179]." (Return of Record, Item 37). Although post-hearing briefs were filed prior to the issuance of the proposed decision, (Return of Record, Items 33, 34 35), briefs and oral argument were not scheduled prior to the issuance of a Final Decision on January 6, 1987. In that decision the DPUC, by three commissioners, granted Balkun's application and issued him a Certificate of Public convenience and Necessity. On January 13, 1987 DPUC mailed copies of the decision to the parties. (Return of Record, Items 38 39).
Petitioners appealed the final Decision to Superior Court on February 6, 1987, within the time limit of Conn. Gen. Stat.4-183. On October 6, 1987 the DPUC filed a Certificate of Record with the court, pursuant to an order of Aronson, J.
Subsequent to the filing of the appeal, but prior to a hearing on it, the DPUC announced that it was considering reopening the docket on Balkun's application. (Return of Record, Item 42 43). Notice of the regular meeting of the agency for October 6, 1987, at which this matter would be considered, was mailed to the parties on October 1, 1987. (Return of Record, Item 44), and no reason was given in the notice for the reopening. Petitioners objected to the reopening of the proceedings on the ground that notice of the reopening was improper and insufficient, and that "any issues relating to [Balkun's application] are now properly before the Superior Court on appeal, and any and all reconsideration of any issues involved in the Application should properly be ordered by a CT Page 1644 judge of the Superior Court after a review of the record and the appeal currently pending." (Return of Record, Item 46 at p. 3).
At a regular meeting of the DPUC on October 6, 1987, the docket was reopened for the purpose of accepting written briefs and hearing oral arguments on the Proposed Decision dated December 9, 1986. (Return of Record, Item 48 49). Petitioners were notified of the reopening, and informed that oral arguments would be held on October 13, 1987. (Return of Record, Item 49). The DPUC issued a Notice of Oral Arguments stating "In accordance with the provisions of 4-179. . .the Department will reopen the docket cited above, pursuant to Conn. Gen. Stat. 16-9
in order to hear oral arguments to the hearing officer's proposed decision, rendered in this docket, dated December 9, 1986." Oral arguments were held on October 13, 1987. Petitioners appeared in order to protect their interests, but did so under protest. (Return of Record, Items 51 and 54 at p. 1).
At a regular meeting of the DPUC held on November 3, 1987, the agency, by unanimous decision, approved the application of Balkun. (Return of Record, Item 55). The Decision, dated November 3, 1987, states: "The application is hereby approved, effective January 6, 1987." (Return of Record, Item 54 at p. 6, Item 56 at p. 7). This Decision and the previously issued Decision are identical except for a reference to oral argument held on October 13, 1987. Copies of the November 3, 1987 Decision were sent to the parties on November 12, 1987. (Return of Record, Item 57).
Petitioners petitioned DPUC for a rehearing and reconsideration of the Decision (Return of Record, Item 58); this petition was denied by DPUC. (Return of Record, Item 61).
Petitioners took an appeal from the November 3, 1987 Decision pursuant to Conn. Gen. Stat. 4-183. This appeal and the earlier appeal were consolidated by order of Allen, J. on May 16, 1988, subject to the following terms: (1) the parties agree that the two administrative appeals may be heard together by the same judge; (2) the parties agree that the substantive issues involving the factual and legal bases for the grant of authority by the DPUC are the same in both cases, and may be argued together; and (3) the parties agree that the procedural issues regarding oral argument under Conn. Gen. Stat. 4-179 and reopening the docket under Conn. Gen. Stat. 16-9 are not the same in both cases, and should be argued separately.
The DPUC, in granting a Certificate of Public Convenience and Necessity to Balkun, acted pursuant to Conn. Gen. Stat.16-281 et. seq., (Effective July 1, 1989 the functions, powers and duties of the DPUC under Chapter 285 were transferred to the CT Page 1645 Department of Transportation), and its own regulations.
If an adequate administrative remedy exists, it must be exhausted before the superior court may exercise jurisdiction over the appeal. Concerned Citizens of Sterling v. Sterling,204 Conn. 551, 556 (1987). The statutes do not provide an administrative route for reviewing the DPUC's decision in this case, but authorize an appeal to superior court by any person aggrieved by the DPUC's decision. Conn. Gen. Stat. 16-307. The petitioners have exhausted their administrative remedies.
Pursuant to Conn. Gen. Stat. 4-182(a), which governs this appeal, the petitioner must be aggrieved by the final decision in a "contested case." The proceeding before the DPUC on Balkun's application was a contested case within the meaning of Conn. Gen. Stat. 4-166(2) and the Regulations of Conn. State Agencies 16-1-2.
The right to appeal the decision of an administrative agency exists only under statutory authority. Connecticut Bank 
Trust Co. v. CHRO, 202 Conn. 150, 154 (1987). This right to appeal may be exercised only by strict compliance with the statute authorizing the appeal. Id.
Aggrievement is a prerequisite to taking an appeal from an agency's decision pursuant to Conn. Gen. Stat. 4-183. State Medical Society v. Board of Examiners in Podiatry, 203 Conn. 295,299 (1987). Conn. Gen. Stat. 4-183(a) states in pertinent part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review by way of appeal under this chapter. . ." (emphasis added).
Determining whether a party is aggrieved involves a two-part test. State Medical Society, 203 Conn. at 299. The party claiming aggrievement must first successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as opposed to a general interest shared by the community as a whole. State Medical Society, 203 Conn. at 299. Next, the party must successfully establish that this interest has been specially and injuriously affected by the decision. Id. at 300. A party has established aggrievement if he has established that "`there is a possibility, as distinguished from a certainty, that some legally protected interest has been adversely affected.'" State Medical Society, 203 Conn. at 300, quoting O'Leary v. McGuinness, 140 Conn. 80, 83 (1953). Mere fears and generalizations are insufficient to prove aggrievement. Caltabiano v. Planning Zoning Commission,211 Conn. 662, 668 (1989). CT Page 1646
The petitioners have satisfied the first prong of the test for aggrievement by alleging and providing evidence that they own DPUC intrastate operating authorities, including certificates, authorizing the same and/or similar service as that granted to respondent John Balkun. See Appeal and Petition, February 2, 1988, and Affidavits attached to Petitioners' Memorandum of Law in Opposition to Respondents' Motion to Dismiss. Ownership of this operating authority is a legally protected property interest, for "[c]ases are legion holding, in one way or another, that the right of a licentiate to practice his profession is a property right, or a right in the nature of a property right, or a valuable franchise. (citations omitted)." State Medical Society, 203 Conn. at 300.
However, the petitioners have failed to show that this legal interest has been specially and injuriously affected by the DPUC's grant of authority to respondent Balkun, and therefore petitioners have failed to prove that they are aggrieved. An allegation that the agency's decision will result in competition harmful to the petitioners' business operations is ordinarily insufficient to make the petitioners aggrieved. State Medical Society, 203 Conn. at 301. However, an allegation that the loss to the business results from unfair or illegal competition may enable the court to exercise jurisdiction over the appeal. Id. at 302.
The petitioners have not alleged or provided evidence that competition caused by the grant of authority to Balkun is unfair or illegal. The petition and affidavit recite facts which, amount to no more than allegations of normal business competition. A distinction should be made between the value of the license to operate and the value of the petitioners' business operations. While the license is a legally protected property interest, the businesses are not. Petitioners have failed to provide the court with evidence sufficient to show that the grant of one additional license in any way adversely affects the value of their licenses. Although the petitioners state in their affidavits that "the existence of more Certificates causes a dilution and diminution in the value of the company's Certificate. . .which negatively affects the company's vested property rights in its Certificate", see, e.g., Affidavit of Ronald Duchaine, such statements are no more than expressions of dissatisfaction with increased competition.
For the foregoing reasons, the court finds that the petitioners are not aggrieved, and therefore the court lacks jurisdiction over the appeal. The appeal is dismissed.
O'CONNOR, J. CT Page 1647